NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| : | |
| IN RE MERCK & CO., INC. : | **Hon. Dennis M. Cavanaugh** |
| VYTORIN ERISA LITIGATION : | |
| : | **OPINION** |
| _____ : | |
| : | Civil Action No. 08-1974 (DMC) |
| This Document relates to: : | |
| THE CONSOLIDATED ERISA ACTION : | |
| : | |
| _____ : | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon Plaintiffs' Robert Cimato, Eric. D. Good, Elizabeth

D. Maruca, and Louis L. Normand ("Plaintiffs") Motions for (a) an Order Granting Final Approval

of (i) the Class Action Settlement (the "Settlement")[1], (ii) Certification of a Settlement Class, and

(iii) the Proposed Plan of Allocation, all of which this Court preliminarily approved by the Order

dated June 22, 2012 (ECF No. 129), and (b) an Order granting an Award of Attorneys' Fees,

Reimbursement of Expenses, and Case Contribution Awards to Named Plaintiffs. After considering

the submissions of the parties, and based upon the Fairness Hearing conducted before this Court on

September 25, 2012, it is the decision of the Court, for the reasons expressed herein that Plaintiffs'

Motions are **granted**.

---

[1] The terms of the Settlement and the Proposed Plan of Allocation are set forth in the
Class Action Settlement Agreement dated May 22, 2012. ECF No. 128, Ex. 2.

**I. Background**

Class Counsel[2] has submitted these motions on Plaintiffs' behalf. The facts of this case are well known and are stated in Plaintiffs' Moving Papers. (ECF 130, 131).

**II.     LEGAL STANDARDS**

**A.     Settlement Approval**

Federal Rule of Civil Procedure 23(e), provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs." FED. R. CIV. P. 23(e).  In determining whether to approve a class action settlement pursuant to Rule 23(e), "the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir.1995) (quoting Grunin v. Int'l House of Pancakes, 513 F.2d 114, 123 (8th Cir. 1975), cert. denied, 423 U.S. 864 (1975) (citation omitted)).

Before giving final approval to a proposed class action settlement, the Court must determine that the settlement is "fair, adequate, and reasonable."  Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 588 (3d Cir. 1999); Walsh v. Great Atl. & Pac. Tea Co., 726 F.2d 956, 965 (3d Cir. 1983).  In Girsh v. Jepson 521 F.2d 153, 157 (3d Cir. 1975), the Third Circuit identified nine factors, so-called "Girsh factors," that a district court should consider when making this determination: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing

_____

[2] Class Counsel, as defined in the Settlement Agreement refers to Co-Lead Class Counsel Kessler Topaz Meltzer & Check, LLP and Izzard Nobel, LLP and Liaison Class Counsel Trujillo Rodrigues & Richards, LLC.

liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." In re American Family Enterprises, 256 B.R. 377, 418 (D.N.J. 2000). Rather, the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under Girsh. See In re Orthopedic Bone Screw Prods. Liab. Litig., 176 F.R.D. 158, 184 (E.D. Pa.1997); see also In re AT&T Corp. Sec. Litig., 455 F.3d 160 (3d Cir. 2006). In sum, the Court's assessment of whether the settlement is fair, adequate and reasonable is guided by the Girsh factors, but the Court is in no way limited to considering only those enumerated factors and is free to consider other relevant circumstances and facts involved in this settlement.

**B.      Class Certification**

Class certification under FED. R. CIV. P. 23 has two primary requirements. First, pursuant to Rule 23(a), the party seeking class certification must demonstrate the existence of numerosity of the class, commonality of the questions of law or fact, typicality of the named parties' claims or defenses, and adequacy of representation. Second, the party must demonstrate that the class fits within one of the three categories of class actions set forth in FED. R. CIV. P. 23(b). Rule 23(b)(1) allows certification of a class if prosecuting separate actions would result in prejudice either to Plaintiff or Defendants. In re Ikon Office Solutions, Inc. Sec. Litig., 191 F.R.D. 457, 466 (E.D.Pa. 200). Rule 23(b)(2) allows certification of a class where the party opposing the class has acted or

refused to act in a manner generally applicable to the class, so that final injunctive or declaratory relief would be appropriate with respect to the class as a whole.  Certification under Rule 23(b)(3) is permitted when the court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310 (3d Cir. 2008) (quoting FED. R. CIV. P. 23(b)(3)).  "The twin requirements of Rule 23(b)(3) are known as predominance and superiority."  Id.

**C.**    **Attorneys' Fees**

The Third Circuit Court of Appeals identified several factors--the Gunter factors--that a district court should consider when evaluating a motion for an award of attorneys' fees.  These factors include: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases.  In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 301 (3d Cir. 2005) (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

**III.    DISCUSSION[3]**

**A.**    **Settlement Approval**

Factor 1. Complexity, Expense and Likely Duration of Litigation

This factor is concerned with assessing the "probable costs, in both time and money, of

---

[3] The facts in this section are taken from Plaintiffs' Moving Papers. ECF No. 130, 131.

4

continued litigation." In re Cendant Corp. Litig., 264 F.3d 201, 234 (3d Cir. 2001).  Significant

delay in recovery if this case proceeds to trial favors settlement approval.  See, e.g., In re Warfarin

Sodium Antitrust Litig., 391 F.3d 516, 536 (3d Cir. 2004); Weiss v. Mercedes-Benz of N. Am., Inc.,

899 F. Supp. 1297, 1301 (D.N.J. 1995).  As asserted by Plaintiffs, this case has been ongoing for four

years, and although Plaintiff's Complaint survived the pleading stage of this litigation, many of the

complex legal and factual issues raised during the briefing of Defendant's Motion to Dismiss would

have to withstand the rigors of summary judgment practice and eventually trial.  Without settlement,

the parties would need to engage in extensive additional discovery, as well as the exchange of pre-

trial, and potentially, trial and post-trial motions.  The necessary delay through trial, post-trial

motions and the appellate process would deny the Settlement Class any recovery for years.

Therefore, this factor favors settlement approval.


Factor 2. Reaction of the Class to Settlement

       This factor requires the Court to evaluate whether the number of objectors, in proportion to

the total class, indicates that the reaction of the class to the settlement is favorable.  The Court also

notes that the second Girsh factor is especially critical to its fairness analysis, as the reaction of the

class "is perhaps the most significant factor to be weighed in considering [the settlement's]

adequacy."  Sala v. National R.R. Passenger Corp., 721 F. Supp. 80, 83 (E.D. Pa. 1989); In re

Orthopedic Bone Screw Prods. Liab. Litig., 176 F.R.D. 158, 185 (E.D. Pa. 1997) (stating that a

"relatively low objection rate militates strongly in favor of approval of the settlement" (internal

citations omitted)). Pursuant to this Court's Order granting preliminary approval of the Settlement,

any objections from the Settlement Class were required to be received by the Court by September

4, 2012.  The only objection here, out of a class of 42,743 Settlement Class Members, was made by Beverly Slifer. Ms. Slifer  objected to the Settlement "only to the extent that it waives [Ms. Slifer's] right to pursue her legal claim against Defendant Merck & Co., the Company's Long-Term Disability Plan and its Life Insurance company "to recover long-term disability benefits." (Notice of Objection to Settlement. Aug. 31, 2012. ECF No. 132, ¶ 2.) Ms.  Slifer does not object to terms of the Settlement itself.  Additionally, Sophie Halson spoke at the Fairness Hearing, not to object to the Proposed Settlement, but seeking clarification of her status within the Settlement Class. This militates strongly in favor of a finding that the Settlement is fair and reasonable, and is entitled to nearly dispositive weight.  New England Carpenters Health Benefits Fund v. First DataBank, Inc., 602 F. Supp. 2d 277, 282, 285 (D. Mass. 2009); In re Linerboard Antitrust Litig., 321 F. Supp. 2d 619 (E.D. Pa. 2004).  The second Girsh factor, therefore, weighs strongly in favor of approving the Settlement.


Factor 3. Stage of the Proceedings and Amount of Discovery Completed

        Pursuant to the third Girsh factor, the Court must consider the "degree of case development that Class Counsel have accomplished prior to Settlement," including the type and amount of discovery already undertaken. GMC, 55 F.3d at 813.  In short, under this factor the Court considers whether the amount of discovery completed in the case has permitted "counsel [to have] an adequate appreciation of the merits of the case before negotiating."  In re Schering-Plough/Merck Merger Litig., No. 09-1099, 2010 U.S. Dist. LEXIS 29121 at *30. See also, Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 588 (3d Cir. 1999) ("Post-discovery settlements are more likely to reflect he true value of the claim and be fair.") (citation omitted).  Here, the parties litigated this case for four years before

6

entering into the Settlement. During that time, Class Counsel reviewed millions of pages of documents and participated in depositions of numerous key fact witnesses, as well as several expert witnesses. Class Counsel also negotiated the Settlement with the assistance of an experienced mediator. It is thus clear that Plaintiffs' counsel have an adequate appreciation of the facts in this matter, and this factor weighs in favor of approval.

Factors 4 and 5. Risks of Establishing Liability and Damages

A trial on the merits always entails considerable risk. <u>Weiss</u>, 899 F. Supp. at 1301. "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." <u>GMC</u>, 55 F.3d at 814. "The inquiry requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" <u>In re Safety Components Int'l</u>, 166 F. Supp. 2d 72, 89 (D.N.J. 2001). As this Court has recently observed in a similar ERISA company stock fund case:

> ERISA class actions based on the same theories as the present matter involve a complex and rapidly evolving area of law. This uncertainty, combined with the risks associated with a potential trail and the need to overcome likely summary judgment motions, indicates that Plaintifff faced significant risks in establishing liability and damages if the matter proceeded to trial.

<u>In re Schering-Plough Corp. Enhance ERISA Litig</u>., 2012 WL 1964451 at *5.

Plaintiff faces significant risks in establishing liability and damages, and this factor therefore weighs in favor of approval.

Factor 6. Ability of Defendants to Maintain Class Certification

Plaintiffs had not yet filed a Motion for Class Certification at the time the Proposed Settlement was reached, but Class Counsel believe that the Court would have granted the Motion for Class Certification. Nonetheless, as in any case, certification was not guaranteed. See, eg., Asher v. Baxter Int'l Inc., 505 F.3d 736, 741 (7th Cir. 2007) (noting that the district court denied class certification three times). Moreover, even where (unlike here) a class has already been certified, courts routinely approve settlement pursuant to the other Girsh factors in light of the constant risk that the class may present "intractable management problems" that warrant decertification of the class. See In re Safety Components, Inc. Sec. Lititg., 166 F. Supp. 2d 72, 91 (D.N.J. 2001).

Factor 7.  Ability of Defendants to Withstand a Greater Judgment

While Merck could withstand a judgment higher than $10.4 million, countless settlements have been approved where a settling defendant has had the ability to pay great amounts, and this fact alone does not weigh against settlement approval. In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 538 (3d Cir. 2004) (no error when trial court found large corporation ability to pay higher amount to be irrelevant); see also In re Schering-Plough Corp. Enhance ERISA Litig., 2012 WL 1964451 at *5 (this factor, standing alone, "does not weigh against a finding of reasonableness.")

Factors 8 and 9.  Reasonableness of the Settlement Fund in Light of the Best Possible Recovery, and in Light of the Attendant Risks of Litigation

"According to Girsh, courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery (the eighth Girsh factor) and a range in light of all

the attendant risks of litigation (the ninth factor)." <u>GMC</u>, 55 F.3d at 806. "The last two <u>Girsh</u> factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." <u>In re Schering-Plough/Merck Merger Litig.</u>, No. 09-1099, 2010 U.S. Dist. LEXIS 29121 at *38-39. The Court finds the benefit conferred by the Settlement in this case to be substantial. The Settlement represents a better option than little or no recovery at all. Thus, the reasonableness of the settlement weighs in favor of approval.

Factor 10. Additional Factors in Favor of Settlement Order

Further support for the reasonableness of the Settlement comes from the Report of Evercore Trust Company, N.A[4]., the Independent Fiduciary retained to evaluate the reasonableness of the Settlement. The Independent Fiduciary reviewed key documents, interviewed counsel for the parties and evaluated the strengths and weaknesses of the legal and factual arguments. Based on this analysis, the Independent Fiduciary concluded that the terms and amount of the Settlement, the release, the plan of allocation, and Plaintiffs' request for attorneys' fees were "reasonable, in light of the Plans' likelihood of full recovery, the risks and costs of litigation and the value of the claims foregone."

Summary of Factors

In sum, the Court finds that the balance of factors weigh in favor of approval of the proposed Settlement. The Court further finds that the Settlement is fair, adequate, reasonable and proper, and in the best interests of the Settlement Class. Accordingly, the Court approves the Settlement

[4]The Report of Evercore Trust Company, N.A. can be found as Exhibit B of the Declaration of Mark P. Kindall, which is attached to Plaintiffs' Supplemental Memorandum in Further Support of Their Motion for Final Approval of Class Action Settlement. ECF No. 133.

Agreement.

**B.     Class Certification**

The Supreme Court has acknowledged the propriety of certifying a class solely for settlement purposes. See e.g., <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 618 (1997). Plaintiffs have requested that the Court certify a Settlement Class comprised of all persons who were participants in an/or beneficiaries of the Plans from July 26, 2004 through March 31, 2008, inclusive (the "Class Period"), whose accounts included investments in the Merck Common Stock Fund. Defendants do not object to certification for purposes of Settlement only.

Certification of the Settlement Class in this action is warranted for numerous reasons. First and foremost, before entering a Preliminary Approval Order, this Court examined the record and preliminarily certified the Settlement Class pursuant to FED R. CIV. P. 23(b)(1). Nothing has changed in the record that would compel the Court to reach a different conclusion with respect to the final, rather than preliminary, approval of the Settlement Class. Further, cases brought under Section 502 (a)(2) of ERISA to recover plan losses resulting from fiduciary breaches are well-suited for class status because the claims are brought, by definition and in practice, on behalf of retirement plans and all of the affected plan participants.  <u>See, e.g.</u>, <u>In re Schering Plough Corp. ERISA Litig.</u>, 589, F3d. 585, 604 (3d Cir. 2009) ("In light of the derivative nature of ERISA § 502 (a)(2) claims, breach of fiduciary duty claims brought under § 502 (a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23 (b)(1) class, as numerous courts have held").

The Settlement Class also satisfies the four threshold requirements of Fed. R. Civ. P. 23(a) enumerated in <u>Warafin</u>.

1. Numerosity

Plaintiffs have alleged that Merck employs over 33,200 employees in the United States, including Puerto Rico. It is reasonable to assume that a significant number of those employees participated in, or were beneficiaries of, the three Plans[5] during the Class Period and that the numerosity requirement is satisfied.

2. Commonality

Plaintiffs share several questions of law and fact common with the putative class members in regards to the management, administration, and monitoring of the Plans.

3. Typicality

In this case, both Plaintiffs and the putative Settlement Class were participants in the Plans because portions of their individual Plan investment portfolios were invested in Merck stock. Each Plaintiff, like the putative Settlement Class members, sustained losses as a result of Defendants' fiduciary misconduct in managing the Plans' investment in Merck stock during the Class Period. Accordingly, the claims of Plaintiffs and the Settlement Class are based on the same legal theories - that Defendants breached their ERISA fiduciary duties with regard to investment of Plan assets.

4. Plaintiffs are Adequate Representatives

Plaintiffs' interests do not conflict with those of the absent Settlement Class members. Plaintiffs are asserting identical claims to those of the absent, and have the same burden of proof

---

[5] "Plans" or "Plan" refer collectively to the Merck & Co., Inc. Employee Savings & Security Plan, the Merck & Co., Inc. Employee Stock Purchase & Savings Plan, and the Merck Puerto Rico Employee Savings & Security Plan.

as those of the absent Settlement Class members.

Lastly, the class satisfies Rule 23(b)(1)(B) because absent certification as a class action, both parties face the possibility of inconsistent judgments, such as the possibility that in one case Defendants may be held liable as fiduciaries, and in another they may not.

**C.      Proposed Plan of Allocation**

A plan of allocation need only have a "reasonable, rational basis, particularly if recommended by experienced and competent class counsel." In re American Bank Note Holographics, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001). The test is simply whether the proposed plan, like the settlement itself, is fair and reasonable. See Walsh v. Great Atl. & Pac. Tea Co., 726 F.2d 956, 964 (3d Cir. 1983) ("The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable.")

In reviewing plans of allocation, "courts give great weight to the opinion of qualified counsel." In Re Schering-Plough Corp. Enhance ERISA Litig., 2012 WL 1964451 at *6 (citing White v. NFL, 822 F. Supp. 1389, 1420 (D. Minn. 1993)). Here, Class Counsel drafted a Plan of Allocation that reflects their damage theory of the case in a simple and straightforward manner and that prorates damages among Settlement Class members according to loss incurred. According to the proposed Plan of Allocation, the Settlement will be divided among the members of the Settlement Class on a pro rata basis reflecting the member's interest in the Merck Common Stock Fund during the Class Period. The Plan of Allocation should thus be approved as part of the Settlement as fair, reasonable, and adequate.

**D.      Attorneys' Fees**

The Settlement of this case is $10.4 million ($10,400,000.00). Plaintiffs seek an Award of Attorneys' fees in the amount of $3,463,200.00, which represents 33.3% of the total Settlement Fund, which is justified under the factors considered by courts in the Circuit in determining fee awards.

The method of calculations seems appropriate. It is generally accepted by courts in the Third Circuit that attorneys' fees based on a common fund recovery are awarded pursuant to the percentage of the fund method of calculation. See, e.g., In re Diet Drugs, 582 F.3d at 540 ("In common fund cases such as this one, the percentage-of-recovery method is generally favored.") (citing In re AT & T Corp. Sec. Litig., 455 F.3d 160, 165 (3d Cir. 2006)); see also Mehling, 248 F.R.D. at 464 ("Of the two methods to analyze fee requests in class actions – the lodestar method and the percentage of recovery method – the percentage of recovery method 'is generally favored in common fund cases.'")(citations omitted); Kolar v. Rite Aid Corp., No. 01-cv-1229, 2003 WL 1257272, at *4 (E.D. Pa. Mar. 11, 2003) (ERISA class action settlement, finding, "[a]s this is a common fund settlement, it seems to us reasonable to apply the percentage approach"); Varacallo v. Mass. Mut. Life. Ins. Co., 226 F.R.D. 207, 248-49 (D.N.J. 2005) (same).

Additionally, The Manual for Complex Litigation also endorses the use of the percentage of recovery method in awarding attorneys' fees in common fund cases. See MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.21 at 187 (2004) (commenting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common fund cases").

Further, the percentage requested is fair and reasonable under the relevant standards set

forth in <u>Gunter v. Ridgewood Energy Corp.</u>, 223 F.3d 190, 195 n.1 (3d Cir. 2000). The Class, with just under 43,000 members, will receive the immediate and certain benefit of $10.4 million plus accrued interest, less attorneys' fees, expenses and Case Contribution Awards for the Named Plaintiffs, which is equal to approximately $250 per class member. Additionally, they may still recover from the claims in the companion securities case. All members of the class were notified of the fees that Class Counsel would seek, and were also advised as to the option and process for objecting. Only one Settlement Class member has objected to the Settlement, but not to the terms of the Settlement or to the Award of Attorneys' Fees, but rather, because of her concern that she would be prevented from bringing future, unrelated long-term disability claims against Merck. Lastly, the attorneys fees to be awarded here are a fair reflection of counsels' skill and expertise. <u>See</u> <u>In re Schering-Plough Corp. Enhance ERISA Litig.</u>, 2012 WL 1964451, at * 6 (finding requested attorneys' fees of 33.3 percent of settlement fund justified in part because class counsel were "highly skilled attorneys with substantial experience in class action litigation."). Class Counsel have spent the past four years reviewing voluminous documents, taken or participated in dozens of depositions, and spent much time preparing and submitting briefs during the pleading stage. A real risk of non-payment exists here for the Class, as only four ERISA company stock fund cases known to Class Counsel have been tried on the merits, all of which resulted in defense verdicts. Class Counsel has spent 22,753 combined hours in prosecuting this case on behalf of the class[6].

    In sum, the Court finds that the balance of factors weigh in favor of an award of attorneys' fees.  The requested fees have not been objected to by any shareholder or by

_____

    [6]Exhibits 4,7, and 9 to the Joint Declaration. ECF No. 130, Ex.2.

Defendants.  The Court therefore approves the award.

**E.      Reimbursement of Expenses**

Plaintiffs seek reimbursement of expenses incurred in connection with the prosecution of this Action in the amount of $463,931.44. It is axiomatic that "[c]ounsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case. In re Cendant Corp., 232 F.Supp. 2d 327, 347 (D.N.J. 2001) (quoting In re Safety Components Int'l, Inc., 166 F. Supp. 2d 72, 104 (D.N.J. 2001)). Here Class Counsel's expenses are carefully documented in the declarations submitted in support of the motion for attorneys' fees, and include fees for experts, electronic research, travel and lodging expenses, postage and copying costs.[7]

The Court therefore approves the award.

**F.      Case Contribution to Named Plaintiffs**

Class Counsel also seeks permission to pay Case Contribution Awards in the Amount of $10,000 to each of the four Named Plaintiffs, Robert Cimato, Eric D. Good, Elizabeth D. Maruca, and Louis L. Normand.  It is not uncommon to award such fees.  See, e.g., Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 145 (E.D. Pa.2000) (quoting In re S. Ohio Corr. Facility, 175 F.R.D. 270, 272 (S.D. Ohio 1997)) ("[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation.").  Here, Named Plaintiffs significantly contributed to the litigation and consulted with Co-Lead Class Counsel during the litigation. Their initiative, time,

---

[7] Rodriguez Decl. ¶ 5, Joint Decl. ¶¶ 61, 71.

and efforts were essential to the successful prosecution of the case and resulted in a significant

recovery for the Settlement Class.

The Court grants permission to award incentive fees.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motions are **granted**.  An appropriate Order

accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:        September 28, 2012
Orig.:        Clerk
cc:          All Counsel of Record
             File